COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

March 24, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C/A NO. 03A01-9706-CV-00213 |
| DEPARTMENT OF | ) | |
| CHILDREN SERVICES, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | RHEA COUNTY JUVENILE COURT |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| SHIRLEY MARIE DARR, | ) | |
| | ) | HONORABLE WILLIAM G. McPHEETERS, |
| Respondent-Appellant. | ) | JUDGE |


For Appellant

CAROL ANN BARRON
Dayton, Tennessee

For Appellee

JOHN KNOX WALKUP
Attorney General and Reporter
Nashville, Tennessee

DOUGLAS EARL DIMOND
Assistant Attorney General
General Civil Division
Nashville, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                                    Susano, J.

1

The trial court terminated the parental rights of Shirley Marie Darr ("Mother") with respect to her minor children, Heather M. Stanley (DOB: February 12, 1989) and Tonya J. Stanley (DOB: January 11, 1991). Mother appealed, contending that the evidence preponderates against the trial court's determination that grounds exist to terminate her parental rights.

I. *Procedural History*

On May 15, 1992, the Tennessee Department of Children's Services ("DCS")[1] filed a petition for temporary custody of the subject children. The petition was prompted by the fact that the children had been sexually abused by their natural father, James Stanley ("Stanley").[2] The petition for temporary custody alleges, among other things, that "[t]he natural mother is unable or unwilling to protect said children from harm." Upon the filing of the petition, an order was entered placing the temporary care and custody of the children with DCS. On October 1, 1992, following a hearing, the trial court awarded the children's legal custody to DCS, and placed the children in the physical custody of their maternal grandmother, Mildred Darr.[3] The children have remained in foster care since the temporary placement of May 15, 1992.

---

[1] When the petition was filed, the Department of Children's Services was known as the Department of Human Services. For convenience, the Department will be referred to as "DCS" throughout this opinion.

[2] Mother and Mr. Stanley lived together for an unspecified period of time, but they were never married.

[3] In August, 1992, the children were removed from Mildred Darr's physical custody.

2

On November 26, 1996, DCS filed a petition to terminate Mother's parental rights.[4]  After a full hearing, the trial court terminated Mother's parental rights.  The court's judgment, entered May 20, 1997, finds, in part, as follows:

> ...the subject child has been in custody of Petitioner for at least one (1) year: that the continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home; that Defendant,...Shirley Marie Darr, has willfully abandoned the children, Tonya and Heather Stanley, for more than four (4) consecutive months next preceding the filing of the petition in this cause; that the defendant has failed to comply in a substantial manner with the reasonable responsibilities of the foster care plan, and it is, therefore, for the best interest of the said children and the public that all of the Defendant's, Shirley Marie Darr, parental rights to the said children be forever terminated and that the complete custody, control and guardianship of the said child should now be awarded to the State of Tennessee, Department of Children's Services, with the right to place children, Tonya Stanley and Heather Stanley, for adoption and to consent to any adoption in *loco parentis*. This decree will have the effect of terminating all the rights, responsibilities, and obligations of the Defendant, Shirley Marie Darr, arising from the parental relationship, and the Defendant is not hereinafter entitled to notice of proceedings for the adoption of said children by another nor has she any right to object to such adoption or otherwise to participate in such proceedings, or hereafter, at anytime, to have any relationship, legal or otherwise, with said children.

The judgment states that the court's findings are "by clear and convincing evidence."

---

[4]The petition also sought to terminate the natural father's parental rights; but he was not served with process in this proceeding.

3

II.  *Standard of Review*

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness that we must honor "unless the preponderance of the evidence is otherwise."  Rule 13(d), T.R.A.P.  "The scope of review for questions of law is de novo upon the record of the [trial court] with no presumption of correctness."  ***Ganzevoort v. Russell***, 949 S.W.2d 293, 296 (Tenn. 1997).

III.  *Law*

A parent has a fundamental right to the care, custody and control of his or her child.  ***Stanley v. Illinois***, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).  However, it is clear that this right is not absolute; it may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute.  ***Santosky v. Kramer***, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

The issues raised in the pleadings, and the trial court's findings, cause us to focus on the following statutory provisions:

T.C.A. § 37-1-147

> (a) The juvenile court shall be authorized to terminate the rights of a parent or guardian to a child upon the grounds and pursuant to the procedures set forth in title 36, chapter 1, part 1.

5

\*     \*     \*

T.C.A. § 36-1-113

(a) the chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

\*     \*     \*

*(c) Termination of parental or guardianship rights must be based upon:*
*(1) A finding by the court by clear and convincing evidence that the grounds for termination or [sic] parental or guardianship rights have been established; and*
*(2) That termination of the parent's or guardian's rights is in the best interests of the child.*

\*     \*     \*

*(g) Termination of parental or guardianship rights may be based upon any of the following grounds:*
*(1) Abandonment by the parent or guardian, as defined in [T.C.A.] § 36-1-102, has occurred;*
(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;
(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) or guardian(s), still persist;
(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent(s) or guardian(s) in the near future; and
(iii) The continuation of the parent or guardian and child relationship greatly

6

diminishes the child's chances of early integration into a stable and permanent home.

\*     \*     \*

T.C.A. § 36-1-102

As used in this part, unless the context otherwise requires:
*(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:*
*(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;*

\*     \*     \*

*(C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;*

(D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means that, for a period of four (4) consecutive months, no monetary support was paid or that the amount of support paid is token support;

*(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;*

\*     \*     \*

T.C.A. § 37-2-403

7

> (a)(1) Within thirty (30) days of the date of
> foster care placement, an agency shall
> prepare a plan for each child in its foster
> care....
>
>          *    *    *
>
> (2)(A) The plan for any child in foster care
> shall include a statement of responsibilities
> between the parents, the agency and the
> caseworker of such agency.
>          *    *    *
>
> (C) Substantial noncompliance by the parent
> with the statement of responsibilities
> provides grounds for the termination of
> parental rights, notwithstanding other
> statutory provisions for termination of
> parental rights,...

(Emphasis added).


IV. *Analysis*


The petition to terminate in the instant case was based on multiple grounds: abandonment because of a failure to visit, *see* §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i); abandonment because of a failure to support, *see **id.;*** substantial noncompliance by Mother with a plan of care, *see* T.C.A. § 36-1-113(g)(2); and the existence of facts that implicate the provisions of T.C.A. § 36-1-113(g)(3)(A)(i)-(iii). It is clear that we must affirm the trial court's judgment if any *one* of these bases existed in this case.


In March, 1994, Mother decided to move to Florida to be with her mother, Mildred Darr, who had recently moved there from Tennessee. At the time, the children were in foster care in Rhea County and Mother was operating under a plan of care, which had

8

as its goal the reunification of the children with Mother.  We
agree with the trial court's observation as set forth in the
memorandum opinion:

> While she may have made some cursory effort
> to see the children, after March of 1994 she
> failed to make any real efforts to see the
> children and, in fact, moved to Florida where
> it would be virtually impossible to visit
> with her children on any regular basis.  Too,
> having never paid any child support
> whatsoever, or even sending birthday and
> Christmas presents to either of these
> children, evidences a real lack of interest
> in these children.  Her demeanor in court
> suggested that it was everybody else's
> "fault" that she had lost her children.  She
> testified, too, that she had lived with 4
> different men, none of which she married.

The proof reflects that Mother visited with the children on
January 29, 1996, when she was in Rhea County to discuss DCS's
plan of care for her children.  At that time, the goal of the
plan was changed from reunification of the family to adoption;
but, in any event, there is no credible proof that Mother was
advised that she could not visit with her children.  However, she
had only one visit after January, 1996, and that one visit, in
August, 1996, was of such short duration as to qualify as "token
visitation" as that term is defined in T.C.A. § 36-1-102(1)(C).

The evidence reflects that Mother did not send the
children any presents for Christmas in 1995 or 1996.  There was
also proof that she did not send either child a present on the
child's birthday.

9

It is undisputed that Mother did not contribute to the support of her children even though the plan of care provides that she was to pay support of $50 per week. At the time of the hearing, she testified that her income was a gross of $540 every two weeks. When asked why she did not send support, she testified she thought that the $50 per week obligation was unfair and was trying to get it reduced to $25 per week.

The evidence before us does not preponderate against the trial court's finding, by clear and convincing evidence, that grounds for termination, i.e., abandonment by failing to visit and failing to support, "have been established." *See* T.C.A. § 36-1-113(c)(1). Furthermore, the evidence does not preponderate against the trial court's finding, again by clear and convincing evidence, that termination "is in the best interests of the child[ren]." *See* T.C.A. § 36-1-113(c)(2). Because "abandonment" under T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i) has been clearly shown in this case, we do not find it necessary to address the trial court's alternative bases for termination under T.C.A. §§ 36-1-113(g)(2) and (3)(A)(i)-(iii).

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded to the trial court for such further proceedings as may be necessary, consistent with this opinion.

_____
Charles D. Susano, Jr., J.

CONCUR:

10

_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.